IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| PHILLIP MIKLE, Sr., | ) | 1:22-CV-283-RAL |
| | ) | |
| Petitioner | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| v. | ) | |
| | ) | MEMORANDUM OPINION ON |
| WARDEN HUTCHINSON, | ) | PETITION FOR WRIT OF HABEAS |
| | ) | CORPUS |
| Respondent | ) | |
| | ) | ECF No. 4 |
| | ) | |

I.    Introduction

Pending before the Court is the petition for a writ of habeas corpus filed by Petitioner

Phillip Mikle, Sr. pursuant to 28 U.S.C. § 2241. ECF No. 4. For the reasons set forth below,

Mikle's petition will be denied.


II.    Background

On March 5, 2014, the United States District Court for the District of Florida sentenced

Petitioner to a term of 240 months incarceration. ECF No. 10-1 at p. 3. On October 15, 2021,

while Petitioner was serving his sentence at the Federal Correctional Institution (FCI) at

McKean, the Bureau of Prisons (BOP) issued Incident Report No. 3557578, charging Petitioner

with engaging in or encouraging a group demonstration and refusing to obey an order in

violation of Codes 212 and 307. ECF No. 10-3. According to the Incident Report:

> On 10/14/21 at approximately 2:30 p.m., while working as the BB unit
> officer, I observed inmate Mikle, Phillip #98195-044 involved with a
> group of inmates at the entrance to BB. Inmate Mikle was standing

1

> inside the front door with 20-30 inmates.  He yelled, "I'm standing here until they let us go to commissary!  We all need to stand here until they let us go to commissary!"  The front door was not able to be secured with the mass of inmates standing by.  I ordered Mikle once again to move and go away from the door.  He remained in the doorway after I gave the order.

*Id.*

On October 15, 2021, at approximately 1:25 p.m., the BOP served Petitioner with Incident Report No. 3557578 and referred the incident to the Unit Discipline Committee (UDC) for further disposition.  *Id.*  The UDC convened for an initial hearing on October 19, 2021, after providing Petitioner with a notice of his rights.  *Id.* at 2; ECF No. 10-4.  Through a written statement, Petitioner denied encouraging a demonstration or disregarding an order.  ECF No. 10-6 at p. 2.  At the conclusion of the hearing, the UDC determined that there was sufficient evidence to move forward and referred the incident report to the Disciplinary Hearing Officer (DHO) for appropriate sanctions.  ECF No. 10-3 at p. 2.  After receiving notice of the DHO hearing, Petitioner declined the assistance of a staff representative but requested another inmate, Malcom Taylor, as a witness.  ECF No. 10-5 at p. 2.

Petitioner's disciplinary hearing before the DHO took place on October 27, 2021.  ECF No. 10-6 at 2.  Petitioner acknowledged that he had received a copy of the incident report, understood his rights, and that he declined to exercise his right to a staff representative.  Id.; ECF No. 10-5 at p. 2; ECF No. 10-4.  Speaking on his own behalf, Petitioner stated that he "was standing there at the last minute" but "said nothing."  *Id.*  Through a written statement, Petitioner denied that an officer ever approached him and gave him an order and denied yelled at any other inmates to do a demonstration.  *Id.*  Petitioner's witness, inmate Taylor, appeared in person and testified that Petitioner "told the officers he didn't want to be in the unit" and "said he needed to

see psychology." *Id.* Finally, the DHO reviewed silent video footage of the incident and determined that it was consistent with the eyewitness account of the officer. *Id.* at p. 3.

Based on Petitioner's statement and testimony, inmate Taylor's testimony, the reporting officer's written statement and testimony, and the video footage of the incident, the DHO concluded that the greater weight of evidence supported the conclusion that Petitioner had engaged in or encouraged a group demonstration. *Id.* at 3. After determining that Petitioner had committed the charged offense, the DHO sanctioned him with 30 days of disciplinary segregation, disallowance of 27 days of Good Conduct Time, and a loss of commissary privileges for 270 days. *Id.* at 4.

The instant petition for writ of habeas corpus,[1] filed pursuant to 28 U.S.C. § 2241, challenges the due process provided during the disciplinary process. Petitioner raises the following arguments: (1) the DHO improperly found him guilty based on insufficient evidence; and (2) the DHO violated his due process rights by failing to call his requested witness; and (3) the DHO hearing was "rushed." ECF No. 4 at p. 2. This matter is fully briefed and ripe for disposition.

III.     Standard of review

Federal prisoners have a liberty interest in statutory good time credits. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *see also* 18 U.S.C. § 3624(b)(1). While "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply," the United States Supreme Court has identified the following minimum procedural due process rights that must be afforded to a prisoner accused

---

[1] Under § 2241, district courts have authority to grant habeas corpus "within their respective jurisdictions." At the time that he filed his Petition, Petitioner was confined at FCI McKean, which is located within the territorial boundaries of the Western District of Pennsylvania.

of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and, (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67.

In reviewing a disciplinary proceeding, the Court's function is not to decide whether it would have reached the same decision, but to consider "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-57 (1985). *See also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) ("[A] reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause."). This review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'" *McCarthy v. Warden Lewisburg USP*, 631 Fed. Appx. 84, 86–87 (3d Cir. 2015) (quoting *Hill*, 472 U.S. at 455). Rather, "[o]nce the reviewing court determines that there is some evidence in the record to support the finding of the hearing officer, an inmate's challenge to the weighing of the evidence must be rejected." *Cardona v. Lewisburg*, 551 Fed. Appx. 633, 637 (3d Cir. 2014).

IV.   Discussion

Each of Petitioner's grounds for relief rests on his contention that staff at FCI McKean violated his due process rights during his DHO hearing. Specifically, Petitioner contends that the

4

hearing was rushed, he was improperly found guilty, the DHO's decision was not based on
sufficient evidence, and he was denied the right to call his witness. None of these claims
warrants relief.

As noted above, it is well-settled that an inmate's sanction "will not result in a due
process violation as long as the inmate is provided with the process he is due under [*Wolff v.
McDonnell*]." *Macia v. Williamson*, 219 Fed. Appx. 229, 233 (3d Cir. 2007). Those minimum
requirements are limited to: (1) the right to appear before an impartial decision-making body; (2)
twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call
witnesses and present documentary evidence in his defense when it is consistent with
institutional safety and correctional goals; (4) assistance from an inmate representative if the
charged inmate is illiterate or complex issues are involved; and, (5) a written decision by the fact
finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418
U.S. at 563-67.

Turning first to Petitioner's averment that the DHO hearing was "rushed," the Court
notes that the record clearly refutes Petitioner's suggestion that the timing of the hearing violated
the minimum due process rights outlined in *Wolff*. It is undisputed that Petitioner received
written notice of the charges against him on October 19, 2021, over one week before the DHO
hearing. This satisfies the "twenty-four hour advance written notice" requirement contemplated
by *Wolff*.

Secondly, to the extent that Petitioner challenges the sufficiency of the evidence against
him, that challenge also fails. In reaching his decision, the DHO relied on a host of exhibits
including Petitioner's statement and testimony, inmate Taylor's testimony, the incident report
and statement of the reporting officer, and the video footage of the incident. These exhibits

5

clearly amount to "some evidence" in support of the charge and, therefore, Petitioner's due process rights were not violated by the DHO's determination. *See Donahue v. Grondolsky*, 398 Fed. Appx. 767, 772 (3d Cir. 2010) (noting that courts are not "required to re-weigh the evidence, or re-assess the credibility of [a petitioner's] defense"); *Sepulveda v. Warden Canaan USP*, 645 Fed. Appx. 115, 118 (3d Cir. 2016) (reviewing court may not independently assess the credibility of witnesses or re-weigh the evidence so long as the DHO's decision is supported by "any evidence in the record") (quoting *Hill*, 472 U.S. at 454-56).

Finally, Petitioner contends that the DHO violated his due process rights by refusing to allow him to call a witness, Malcolm Taylor, in his defense. Although the DHO's report states that inmate Taylor "appeared in person" and testified that Petitioner "told the officers he didn't want to be in the unit" and "needed to see psychology," ECF No. 10-6 at p. 2, Petitioner contends that the DHO "falsified" this portion of the report and, in fact, "inmate Malcolm did not come to my hearing to testify on my behalf." ECF No. 13-1 at p. 4. In a supporting affidavit, Taylor corroborates that he "was not present to plead on Mikle's behalf" on the date of the hearing and that "the DHO is lying in his report stating that 'I appeared in person' and made a statement." ECF No. 13-2 at p. 3. Had he been called to testify, Taylor states that he would have told the DHO that he "observed inmate Mikle tell Mr. Dinnis that he was tired of inmates being the reason that he continued to be locked down and that he wanted to talk to the psychology doctor." *Id.* at p. 2. He also would have argued to the DHO that the accusing officer was "retaliating against Mikle . . . because of his history of reporting officer abuse against other inmates." *Id.* at p. 3.

Petitioner's claim fails for two reasons. First, despite Petitioner's vigorous contention that Taylor did not personally appear at the hearing to testify, there can be no dispute that the

6

DHO obtained testimony (or at least a statement) from Taylor. The description of Taylor's testimony in the DHO's report – that Petitioner was in his cell and asking to speak to psychology when the alleged misconduct occurred – precisely mirrors the proposed testimony described by Taylor in his affidavit. The DHO's report indicates that he weighed, considered, and rejected that testimony in reaching his decision. Even if Petitioner could establish that the DHO's statement that this testimony was provided in person was inaccurate, the DHO's decision to obtain that testimony in another manner (such as a written statement or prior interview) would not amount to a due process violation. *See Kenney v. Lewisburg*, 640 Fed. Appx. 136, 139 (3d Cir. 2016) (noting that prisoners do not have an "unqualified right to call witnesses" and that a prison's decision not to allow a witness to testify in person does not violate due process where, for example, the witness' testimony can be offered in the form of a written statement) (citing *Wolff*, 418 U.S. at 566).

More critically, the Court of Appeals for the Third Circuit has repeatedly emphasized that "[t]here is no due process violation where a petitioner fails to show prejudice from his inability to call a witness." *Lacey v. Ortiz*, 2019 WL 2710086, at *5 (D.N.J. June 27, 2019). *See*, *e.g.*, *Anderson v. Bledsoe*, 511 Fed. Appx. 145, 148 (3d Cir. 2013) (no due process violation where DHO did not call an inmate's witness because the witness provided a written statement that his testimony would not have exculpatory value); *Pachtinger v. Grondolsky*, 340 Fed. Appx. 774, 776 (3d Cir. 2009) (no due process violation where Petitioner failed to show prejudice based on his inability to call a witness). In other words, "[a]ny alleged denial of [d]ue [p]rocess will suffice to overturn a disciplinary proceeding only where those errors were, in fact, prejudicial." *Jones v. Merendino*, 2023 WL 8295274, at *2 (D.N.J. Dec. 1, 2023) (citing *Millhouse v. Bledsoe*, 458 Fed. Appx. 200, 203 (3d Cir. 2012); *Wilson v. Ashcroft*, 350 F.3d 377, 380–81 (3d Cir.

2003)).  Given that the DHO considered and rejected Taylor's testimony, in whatever form it was offered, at the time of the hearing, Petitioner cannot establish that he was prejudiced by Taylor's alleged failure to appear.  *See*, *e.g.*, *Patel*, 447 Fed. Appx. at 340 (rejecting habeas petition where petitioner could not demonstrate prejudice stemming from alleged procedural violations); *Jennings v. Hollingsworth*, 2016 WL 880501, at *8 (D.N.J. March 8, 2016) ("Because this Court has concluded that there is some evidence to support the Code 217 and 297 violations," Petitioner "cannot show that he suffered prejudice.").  No relief is warranted.

V.     Conclusion

For each of the foregoing reasons, Petitioner's petition for a writ of habeas corpus is denied.[2]  An appropriate order follows.

DATED this 6th day of February, 2024.

BY THE COURT:

RICHARD A. LANZILLO
Chief United States Magistrate Judge

---

[2] Because "[f]ederal prisoner appeals from the denial of a habeas corpus proceeding are not governed by the certificate of appealability requirement," the Court need not make a certificate of appealability determination in this matter. *Williams v. McKean*, 2019 WL 1118057, at *5 n. 6 (W.D. Pa. Mar. 11, 2019) (citing *United States v. Cepero*, 224 F.3d 256, 264-65 (3d Cir. 2000), abrogated on other grounds by *Gonzalez v. Thaler*, 565 U.S. 134 (2012)); 28 U.S.C. § 2253(c)(1)(B).